QUINN EMANUEL URQUHART & SULLIVAN, LLP
  James D. Judah (Bar No. 257112)
  jamesjudah@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:     (415) 845-6600
Facsimile:     (415) 875-6700

Attorneys for Defendant SOLID FINANCIAL
TECHNOLOGIES, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYTECHIP, LLC d/b/a QBIT, a Delaware limited liability company,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>SOLID FINANCIAL TECHNOLOGIES, INC., a Delaware corporation; EVOLVE BANK & TRUST, an Arkansas corporation; and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | **Case No. 3:24-cv-01226-JD**<br><br><br>**DEFENDANT SOLID FINANCIAL TECHNOLOGIES, INC.'s NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>Date:　　　July 18, 2024<br>Time:　　　10:00 a.m.<br>Courtroom: 11—19th Floor<br>Judge:　　Hon.　James Donato |

Case No. 3:24-CV-1226-JD
DEFENDANT SOLID FINANCIAL TECHNOLOGIES, INC.'S MOTION TO DISMISS

1

<u>**NOTICE OF MOTION AND MOTION**</u>

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3      PLEASE TAKE NOTICE that on July 18, 2024 at 10:00 a.m. in Courtroom 11—19th Floor

4  of the above-entitled Court, the Honorable James Donato presiding, located at the San Francisco

5  Courthouse, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Solid Financial

6  Technologies, Inc. ("Solid"), through its counsel of record herein, will and hereby does, move this

7  Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Complaint

8  filed by Plaintiff BYTECHIP, LLC d/b/a QBIT ("Bytechip"), filed on or about January 22, 2024.

9      This Motion is based upon on this Notice of Motion, the accompanying Memorandum of

10  Points and Authorities below, Request for Judicial Notice (Dkt. 18-1), the proposed order submitted

11  herewith, all exhibits and other papers on file in this action, such other evidence and argument as

12  may be presented at or before the hearing on this motion, and such other matters as the Court may

13  consider.

14

15  DATED:  June 5, 2024                  Respectfully submitted,

16                                         QUINN EMANUEL URQUHART & SULLIVAN,
                                           LLP
17

18

19                                    By ____/s/ James D. Judah_____
                                          JAMES JUDAH
20

21                                         Attorney for Defendant Solid Financial
                                           Technologies, Inc.
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

I.    INTRODUCTION ....................................................................................................................1

II.    STATEMENT OF FACTS........................................................................................................1

    A.    Solid and Bytechip Enter into the Banking and Card Services Agreement ...............1

    B.    Solid Suspends Bytechip's Banking Services and Terminates the Agreement ...................................................................................................................2

    C.    The United States Seizes Bytechip's Funds Based on a Finding of Probable Cause of Wire Fraud and Money Laundering.............................................................3

II.    LEGAL STANDARD ..............................................................................................................4

III.    THE COURT SHOULD DISMISS BYTECHIP'S CLAIMS ..................................................5

    A.    Bytechip's Breach of Contract Claim Should Be Dismissed Because Bytechip Has Failed to Plausibly Plead a Breach of the Agreement .......................5

    B.    Bytechip's Conversion Claim Fails as a Matter of Law ...........................................7

        1.    The Bytechip Account Cannot be Converted..................................................8

        2.    The Economic Loss Rule Bars Bytechip's Conversion Claim ......................9

        3.    Bytechip Fails to Allege Undisputed Ownership Over the Funds in the Bytechip Account .....................................................................................10

    C.    Bytechip is Barred from Pursing its Unfair Competition Claim ..............................10

        1.    Plaintiff's UCL Claim Lacks Equitable Jurisdiction....................................11

        2.    Bytechip's Vicarious Liability Theory Bars Its UCL Claim........................11

        3.    Bytechip Fails to State a Claim for Unfair Business Practices under Any Definition.................................................................................................12

        4.    Bytechip Lacks Standing Under the UCL .....................................................14

III.    CONCLUSION ........................................................................................................................14

12009-00001/15000325.1

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................. 5

*Bardin v. Daimlerchrysler Corp.*,
136 Cal. App. 4th 1255 (2006).................................................................................. 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. 5

*Bentham v. Bingham L. Grp.*,
2013 WL 12186171 (S.D. Cal. Nov. 15, 2013) ..................................................... 5, 6

*Charpentier v. Los Angeles Rams Football Club Co., Inc.*,
75 Cal. App. 4th 301 (1999) .................................................................................... 14

*Cusano v. Klein*,
280 F. Supp. 2d 1035 (C.D. Cal. 2003) .................................................................. 9

*Donohue v. Apple, Inc.*,
871 F. Supp. 2d 913 (N.D. Cal. 2012) ................................................................... 13

*Drum v. San Fernando Valley Bar Ass'n*,
182 Cal. App. 4th 247 (2010).................................................................................. 13

*Dunkel v. eBay Inc.*,
2013 WL 415584 (N.D. Cal. Jan. 31, 2013) .......................................................... 6

*Durkee v. Ford Motor Co.*,
2014 WL 4352184 (N.D. Cal. Sept. 2, 2014).......................................................... 11

*Elrich v. Menezes*,
21 Cal. 4th 54352 (1999)......................................................................................... 10

*Emery v. Vista Int'l Serv. Ass'n*,
95 Cal. App. 4th 952 (2002)..................................................................................... 12

*Finton Constr., Inc. v. Bidna & Keys, APLC*,
238 Cal. App. 4th 200 (2015)................................................................................... 10

*Gardner v. Safeco Ins. Co. of Am.*,
2014 WL 2568895 (N.D. Cal. June 6, 2014) .......................................................... 11

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022).................................................................................. 11

*Hall v. Time Inc.*,
   158 Cal. App. 4th 847 (2008).................................................................................14

*JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*,
   115 Cal. App. 4th 168 (2004)..................................................................................9

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)........................................................................12, 13

*Kim v. Westmoore Partners, Inc.*
   201 Cal. App. 4th 267 (2011)..................................................................................8

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005)..................................................................................5

*Lazo v. Bank of Am., N.A.*,
   2012 WL 1831577 (N.D. Cal. May 18, 2012) .......................................................13

*Lesley v. Ocwen Fin. Corp.*,
   2013 WL 990668 (C.D. Cal. Mar. 13, 2013) .........................................................13

*Lopez v. Stages of Beauty, LLC*,
   307 F. Supp. 3d 1058 (S.D. Cal. 2018) ...................................................................5

*Martinez-Rodriguez v. Bank of Am.*,
   2012 WL 967030 (N.D. Cal. Mar. 21, 2012) ..........................................................8

*McKell v. Washington Mut., Inc.*
   142 Cal. App. 4th 1457 (2006)................................................................................8

*Mindys Cosms., Inc. v. Dakar*,
   611 F.3d 590 (9th Cir. 2010)..................................................................................10

*Missing Link, Inc. v. eBay, Inc.*,
   2008 WL 3496865 (N.D. Cal. Aug. 12, 2008).........................................................7

*Moss v. Infinity Ins. Co.*,
   197 F. Supp. 3d 1191 (N.D. Cal. 2016) .................................................................12

*Oakdale Vill. Grp. v. Fong*,
   43 Cal. App. 4th 539 (1996)...................................................................................10

*Oasis W. Realty, LLC v. Goldman*,
   51 Cal. 4th 811 (2011)..............................................................................................5

*Perfect 10, Inc. v. Visa Int'l. Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007).............................................................................11, 12

*Qayumi v. Talent Net, Inc.*,
   2023 WL 218961 (N.D. Cal. Jan. 17, 2023) ...........................................................5

*Reliance Ins. Co. v. U.S. Bank of Wash., N.A.*
   143 F.3d 502 (9th Cir. 1998)..................................................................8

*Rich Prod. Corp. v. Kemutec, Inc.,*
   66 F. Supp. 2d 937 (E.D. Wis. 1999) ...................................................9

*Robinson Helicopter Co., Inc. v. Dana Corp.,*
   34 Cal. 4th 1227 (2015)........................................................................9

*Rubio v. Cap. One Bank,*
   613 F.3d 1195 (9th Cir. 2010)............................................................14

*Snapkeys, Ltd. v. Google LLC,*
   539 F. Supp. 3d 1040 (N.D. Cal. 2021) .............................................10

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*
   49 Cal. App. 4th 472 (1996).................................................................8

*Sonner v. Premier Nutrition Corp.,*
   971 F.3d 834 (9th Cir. 2020)..............................................................11

*State Ready Mix, Inc. v. Moffatt & Nichol,*
   232 Cal. App. 4th 1227 (2015).............................................................9

*Watkins v. MGA Ent., Inc.,*
   574 F. Supp. 3d 747 (N.D. Cal. 2021) .................................................5

*Welco Elecs., Inc. v. Mora,*
   233 Cal. App. 4th 202 (2014)...............................................................8

*Woods v. Google, Inc.,*
   2011 WL 3501403 (N.D. Cal. Aug. 10, 2011)....................................6

*Yamasaki v. Natrol, LLC,*
   2023 WL 5022284 (N.D. Cal. July 17, 2023) ...................................11

*Zepeda v. PayPal,*
   777 F. Supp. 2d 1215 (N.D. Cal. 2011) ...............................................7

**Rules/Statutes**

18 U.S.C. § 1343 ...........................................................................3, 4, 10

18 U.S.C. § 1349 ...........................................................................3, 4, 10

18 U.S.C. §§ 1956 ...................................................................................4

18 U.S.C. §§ 1956 and 1957 ...................................................................3

California Business and Professions Code Section 17200.................11, 12, 14

1

2   California Business and Professions Code Section 17204 ........................................... 14

3   Federal Trade Commission Act section 5 (15 U.S.C. § 45, subd. (n)) ......................... 13

4

5                                **Other Authorities**

6   Fed. R. Civ. P. 9(b) ................................................................................................. 13

7   Fed. R. Evid. 201(b) ................................................................................................. 5

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Bytechip, LLC's ("Bytechip") claims against Solid Financial Technologies, Inc. ("Solid") should be dismissed with prejudice.  Bytechip brings three causes of action against Solid – breach of contract, conversion, and unfair competition – seeking to recover funds that were seized by the Secret Service in November of 2023, and which are currently subject to an *in rem* forfeiture action in the Western District of Tennessee.  *See* Dkt. 18-1, Request for Judicial Notice ("RJN"), Ex. 1.  All three of Bytechip's claims here fail as a matter of law.

First, Bytechip's breach of contract claim does not identify any contractual obligation that Solid allegedly breached.  To the contrary, even accepting Bytechip's allegations as true, Solid complied with its obligations (both to Bytechip and law enforcement agencies).  Second, Bytechip's conversion claim fails on multiple levels – a bank account cannot be converted as a matter of law, and even if it could, Bytechip's claim is barred under the economic loss rule and because Bytechip cannot establish undisputed ownership of the seized funds.  Third, Bytechip cannot allege a viable UCL claim because, *inter alia*, it lacks standing, impermissibly relies on vicarious liability, and cannot articulate any unlawful, fraudulent, or unfair practices.

The Court should therefore dismiss Bytechip's Complaint.  Further, because any amendment would be futile, the dismissal should be with prejudice.

### II.    STATEMENT OF FACTS

#### A.    Solid and Bytechip Enter into the Banking and Card Services Agreement

On September 12, 2022, Bytechip entered into a Banking and Card Services Fee Schedule and Addendum (the "Agreement") with Solid, a financial technology ("fintech") infrastructure provider.  Complaint ¶¶ 9-10.  Under the Agreement, Solid agreed to "coordinate with [Bytechip] to establish a program through which Solid or its Affiliate, together with applicable Banks, will provide … Banking Services [] and Card Services" to Bytechip.  Complaint ¶ 11; *see also* Complaint Ex. 2 at § 2.1.  The term "Bank" is defined in the Agreement as "a financial institution chosen by Solid that will provide Bank Services and Card Services in connection with the Program."  Complaint ¶ 12; *see also* Complaint Ex. 2 at § 1.  Because Solid is a financial technology

infrastructure, and not a bank, the Agreement provided that Solid will "be relying on the applicable Banks to enable Solid to provide or make available the Banking Services." Complaint ¶ 11; *see also* Complaint Ex. 2 at § 5.1. One of Solid's partnering Banks was Evolve Bank & Trust ("Evolve"). Complaint ¶ 21. The Agreement further provided that:

> Solid's partnering Bank ("SPB") will enable each Accountholder to (a) create and maintain an account in the Accountholder's name represented by a virtual bank account number that enables that Accountholder to store, spend, and manage money (this account, a "Financial Account"); and (b) make electronic payments and funds transfers to and from the Accountholder's Financial Account (the services described in this sentence, the "Banking Services"). SPB will act as agent for the Accountholder with respect to the Financial Account.

Complaint ¶ 15; *see also* Complaint Ex. 2 at § 3.1.

Under the Agreement, "Solid may immediately suspend the provision of all or any part of the Banking Services (a) if Solid reasonably believes that Client presents an unacceptable and material level of financial, reputational, legal, regulatory or security risk to Solid or any applicable Bank; (b) if continued access to or use of all or any part of the Card Services or Banking Services poses a material threat to Solid's systems (e.g., DDOS attack); (c) if Solid suspends the Card Services in accordance with the terms herein; or (d) if a Bank or Network directs Solid to do so." Complaint ¶ 22; *see also* Complaint Ex. 2 at § 13.2.

Finally, the Agreement provided that Solid could terminate the Agreement immediately under multiple circumstances. First, "Solid may terminate [this Addendum] immediately upon notice to [Bytechip] if (a) directed by a Network or Bank; or (b) [Bytechip] fails to pay any amounts due to Solid timely and does not cure that failure within ten business days after receiving notice of the failure from Solid." Complaint ¶ 24; *see also* Complaint Ex. 2 at §13.3. Second, "Either party may terminate [the Agreement] in the event the other party, its employees, agents, or representatives commit an act of fraud or willful misconduct that has a material adverse effect on the Program." Complaint ¶ 23; *see also* Complaint Ex. 2 at §10.c.

**B.    Solid Suspends Bytechip's Banking Services and Terminates the Agreement**

On January 20, 2023, Solid advised Bytechip via email that its "risk and compliance team has noticed unusual ACH activity in the [Bytechip] Solid program" and that Solid was therefore

terminating the Agreement "as of January 19, 2023." Complaint Ex. 3; Complaint ¶ 25. Solid further informed Bytechip that the accounts would be closed on February 17, 2023, and that '[f]unds left in accounts past [February 17, 2023] [would] be returned to the approved KYC account holder's address via physical check.'" Complaint ¶ 25; *see also* Complaint Ex. 3. As alleged in the Complaint, "Evolve [] requested certain accounts, including the 1162 account, 'be frozen due to their involvement in unsatisfactory banking practices." Complaint ¶ 33; *see also* Complaint Ex. 5. As further alleged in the Complaint, "Evolve froze or instructed to freeze the funds in the 1162 [Bytechip] account, citing an ongoing fraud investigation with the federal government into a high volume of transactions related to certain accounts, including the 1162 account." Complaint ¶ 31.

### C.     <u>The United States Seizes Bytechip's Funds Based on a Finding of Probable Cause of Wire Fraud and Money Laundering</u>

On November 6, 2023, the United States Secret Service seized the funds in the 1162 Bytechip account pursuant to a Warrant to Seize Property Subject to Forfeiture ("Seizure Warrant") from the United States District Court for the Western District of Tennessee. RJN, Ex. 1. The Seizure Warrant was based on a finding of "probable cause that the assets [in the Bytechip account] constitute or are derived from proceeds of wire fraud in violation of 18 U.S.C. §§ 1343, 1349 and/or property involved in money laundering, in violation of 18 U.S.C. §§ 1956 and 1957, and are therefore subject to civil and criminal forfeiture[.]" *Id.*

On January 22, 2024, the United States filed a complaint for forfeiture *in rem* against all funds deposited, credited, or held up to $2,979,690.04 in the 1162 Bytechip account (the "Forfeiture Action"). *Id.*, Ex. 2 at ¶ 2. In the Forfeiture Action, the United States alleges that the Bytechip Account "contain[s] the proceeds of wire fraud, in violation of 18 U.S.C. § 1343, and/or conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and/or concealment money laundering, in violation of 18 [U.S.C.] § 1956(a)(1)(B)(i), and that all the property in the[] account[] was involved in money laundering transactions[.]" *Id.* at ¶ 45. The Forfeiture Complaint explains that the United States "seeks the forfeiture of all right, title, and interest in the [1162 Bytechip Account] because the property constitutes or is derived from proceeds of wire fraud and wire fraud conspiracy in violation of 18 U.S.C. §§ 1343 and 1349, and property involved in monetary transactions, money

laundering, and conspiracy to commit same, in violation of 18 U.S.C. §§ 1956." *Id*. at ¶ 2. Investigation of a "sudden increase in wire recalls" which were "cited for fraud and scam, including 'invested in crypto scam, company does not exist,' 'victim of fake medical scam,' and 'remitter advised payment is fraudulent'" eventually led to the filing of the Forfeiture Action. *Id*. at ¶ 12. The United States further alleges that the beneficial owner of the Bytechip Account appears to be part of a group "conspiring together to orchestrate fraud scams which are targeting businesses and consumers residing tin the United States and Canada." *Id*. The Complaint explains that "[t]hrough bank documentation, tax documents, open-source research, and direct communication with victims and bank investigators, [the United States] demonstrated that wire fraud proceeds from pig butchering victims are frozen in . . . Bytechip Solidfi vAccount **1162, and that th[is] account[] [is] used to launder the proceeds of wire fraud." *Id.* at ¶ 38.

On February 12, 2024, the court in the Forfeiture Action entered an order providing that that United States Secret Service "will seize the defendant property and hold said property subject to the further orders of this Court," including specifically the 1162 Bytechip account. *Id*., Ex. 3. The Court also ordered "any parties claiming an interest in the said property must file a claim within sixty (60) days of the first date of publication and an answer to the [forfeiture] complaint within twenty (20) days thereafter." *Id.*

On April 12, 2024, Bytechip filed a Verified Claim in the Forfeiture Action asserting "that it has filed suit in California against Solid Financial Technologies and Evolve Bank & Trust. In the California suit, Claimant denies knowledge of the alleged 'unsatisfactory banking practices' and seeks recovery of $4,336,961.74, consisting of the 1162 funds and partial 6272 funds at issue here." *Id.*, Ex. 4 at ¶ 6. Bytechip then filed an Answer in the Forfeiture Action on May 1, 2024. *Id.*, Ex. 5.

## II.    LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is not met unless the "plaintiff pleads factual content that allows the court to draw the reasonable

1  inference that the defendant is liable for the misconduct alleged." *Id.* Courts "are not bound to

2  accept as true a legal conclusion couched as a factual allegation." *Id.* Thus, "[t]hreadbare recitals

3  of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

4  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

5  of action" does not suffice. *Watkins v. MGA Ent., Inc.*, 574 F. Supp. 3d 747, 753 (N.D. Cal. 2021)

6  (citing *Iqbal*, 556 U.S. at 678). The Court can dismiss a claim "based on a lack of a cognizable legal

7  theory or on the absence of facts that would support a valid theory." *Id.* (citation omitted).

8      A court may also consider documents attached to a complaint as exhibits, incorporated

9  therein by reference, or relied upon by plaintiff in bringing the suit, as well as any judicially

10  noticeable matters. *See* Fed. R. Evid. 201(b); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005);

11  *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1063-64 (S.D. Cal. 2018).

12  **III.    THE COURT SHOULD DISMISS BYTECHIP'S CLAIMS**

13      Bytechip's complaint should be dismissed in its entirety. Bytechip alleges three causes of

14  action against Solid: breach of contract, conversion, and unfair competition. All three fail as a matter

15  of law for the reasons explained below.

16      **A.    Bytechip's Breach of Contract Claim Should Be Dismissed Because Bytechip**

17      **Has Failed to Plausibly Plead a Breach of the Agreement**

18      To state a claim for breach of contract under California law, there must be "(1) the existence

19  of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach,

20  and (4) the resulting damages to the plaintiff." *Qayumi v. Talent Net, Inc.*, 2023 WL 218961, at *2

21  (N.D. Cal. Jan. 17, 2023) (quoting *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)).

22  Further, failure to "identify language in the contract that imposes an obligation on the defendant" is

23  grounds for dismissal. *Bentham v. Bingham L. Grp.*, 2013 WL 12186171, at *4 (S.D. Cal. Nov. 15,

24  2013).[1] Here, Bytechip's breach of contract claim fails as a matter of law because the complaint

---

[1]  S*ee also Dunkel v. eBay Inc.*, 2013 WL 415584, at *8 (N.D. Cal. Jan. 31, 2013) ("While Plaintiffs

25
include a laundry list of complaints regarding Defendant's alleged breach, they fail to show what

26  provision, if any, of the [contract] created a duty covering Defendant's actions or prohibited any of
Defendant's alleged conduct."); *Woods v. Google, Inc.*, 2011 WL 3501403, *5 (N.D. Cal. Aug. 10,

27  2011) (dismissing a breach of contract claim because the plaintiffs failed to show that defendant

28  breached an actual obligation in the alleged agreement).

does not (and cannot) identify any language in the Agreement that imposes an obligation that Solid allegedly breached.

Bytechip alleges three actions by Solid: 1) failing to enable Bytechip as an Accountholder to make electronic payments and funds transfers to and from Bytechip's Financial Account since January 20, 2023 (Paragraph 42); 2) failing to enable Bytechip as an Accountholder to transfer funds from Bytechip's Financial Account to any ACH-enabled account at any other financial institution since January 20, 2023 (Paragraph 43); and 3) failing to describe any material breach in the Termination Email or any other correspondence to Bytechip (Paragraph 44).  Complaint ¶¶ 42-44.  However, even accepting Bytechip's allegations as true, Bytechip does not identify any language in the Agreement that impose obligations that would be breached by such conduct.

To the contrary, the Agreement specifically provides that electronic payments and funds transfers are **Banking Services** enabled and provided by one of Solid's partner Banks, not Solid. *See* Complaint, Ex. 2 at 5.1 ("**Solid's partnering Bank ("SPB") will enable** each Accountholder to … (b) **make electronic payments and funds transfers to** and from the Accountholder's Financial Account (the services described in this sentence, the "**Banking Services**") (emphases added); *see also id.* § 1 (defining "Bank" as "a financial institution chosen by Solid that will provide Bank Services and Card Services in connection with the Program").  Moreover, the Agreement provides that "**Solid may immediately suspend the provision of all or any part of the Banking Services** (a) if Solid reasonably believes that Client presents an unacceptable and material level of financial, reputational, legal, regulatory or security risk to Solid or any applicable Bank" or "(d) if a Bank or Network directs Solid to do so."  Complaint ¶ 22 (emphasis added); Complaint Ex. 2 at § 13.2.  And Bytechip's own allegations acknowledge that Evolve (one of Solid's partner Banks) directed Solid to suspend Banking Services to Bytechip based on an unacceptable level of (*inter alia*) reputational, legal, and regulatory risk to Solid and Evolve.  *See* Complaint ¶ 33 ("The Evolve Letter states that **Evolve has requested certain accounts, including the 1162 account, 'be frozen due to their involvement in unsatisfactory banking practices.'**").  Bytechip does not identify any language from the Agreement that imposes an obligation for Solid to "enable Bytechip as an Accountholder to make electronic payments and funds transfers to and from Bytechip's Financial

Account" or "enable Bytechip as an Accountholder to transfer funds from Bytechip's Financial Account to any ACH-enabled account at any other financial institution" once directed by Evolve to suspend Banking Services, and therefore paragraphs 42 and 43 fail to state a claim for breach of contract.  *Zepeda v. PayPal*, 777 F. Supp. 2d 1215, 1220 (N.D. Cal. 2011) (dismissing a breach of contract claim because Plaintiffs failed to identify any provision in the agreement which prohibited defendant's alleged conduct, and because the agreement included provisions which expressly permitted defendant's conduct); *see also Missing Link, Inc. v. eBay, Inc.*, 2008 WL 3496865, at *5-6 (N.D. Cal. Aug. 12, 2008) (dismissing claims for breach of contract as "[t]he eBay user agreement by its plain terms appears to confer on eBay the right to [the allegedly improper action].").

Similarly, Bytechip fails to identify an obligation that was allegedly breached even accepting as true Bytechip's allegation that Solid did not describe a material breach in the January 20, 2023 "Termination Email."  To the contrary, Bytechip acknowledges that under the express language of the Agreement, Solid was permitted to terminate the Agreement "immediately upon notice to Client if (a) directed by a Network or Bank" or "in the event [Bytechip], its employees, agents, or representatives commit an act of fraud or willful misconduct that has a material adverse effect on the Program."  Complaint ¶¶ 23-24; *see also* Complaint Ex. 2 at § 10.c and 13.3.  And Bytechip further alleges that Solid was directed by Evolve to "freeze the funds in the 1162, citing an ongoing fraud investigation with the federal government into a high volume of transactions related to certain accounts, including the 1162 account."  Complaint ¶ 31; *see also* RJN, Ex. 1.  Bytechip therefore fails to state a claim for breach of contract based on this alleged conduct as well.  *Zepeda*, 777 F. Supp. 2d at 1220; *Missing Link, Inc.*, 2008 WL 3496865 at *5-6.

**B.      Bytechip's Conversion Claim Fails as a Matter of Law**

Bytechip's conversion claim against Solid should be dismissed for several independent reasons.  First, as a matter of law, the funds in Bytechip's bank account at Solid cannot be the proper subject of a conversion claim, as they do not constitute a specific identifiable sum held in trust by Solid for Bytechip. Second, the economic loss rule bars Bytechip from asserting a tort claim for conversion that is predicated on the same alleged conduct underlying its breach of contract claim.  Finally, Bytechip fails to adequately allege the essential element of undisputed ownership over the

1  funds, as there is an ongoing dispute regarding whether the funds represent the proceeds of illegal

2  activity.  Each of these deficiencies independently show how Plaintiff's conversion claims cannot

3  be cured and must be dismissed with prejudice.

4  **1.    <u>The Bytechip Account Cannot be Converted</u>**

5  "Conversion is the wrongful exercise of dominion over the property of another."  *Welco*

6  *Elecs., Inc. v. Mora*, 233 Cal. App. 4th 202, 208 (2014).  A conversion claim for money lies "only

7  where defendant interferes with plaintiff's possessory interest in a specific, identifiable sum, such

8  as when a trustee or agent misappropriates the money entrusted to him."  *Martinez-Rodriguez v.*

9  *Bank of Am.*, 2012 WL 967030, at *5 (N.D. Cal. Mar. 21, 2012) (quoting *Kim v. Westmoore*

10 *Partners, Inc*. 201 Cal. App. 4th 267, 284 (2011) (citations and quotation marks omitted)).

11 The Ninth Circuit has made clear that "bank accounts generally cannot be the subject of

12 conversion, because they are not specific money, but only an acknowledgment by the bank of a debt

13 to its depositor."  *Reliance Ins. Co. v. U.S. Bank of Wash., N.A.* 143 F.3d 502, 506 (9th Cir. 1998)

14 (citation omitted).  Accordingly, California courts have held that specifiable money in the context

15 of conversion does not infer that each dollar of the sum needs to be "earmarked," but rather that the

16 money at issue is distinct and identifiable, as in the form of a trust. *See, e.g., Software Design &*

17 *Application, Ltd. v. Hoefer & Arnett, Inc*. 49 Cal. App. 4th 472, 485 (1996) (holding that "without

18 any indication that [the money in a bank account] was held in trust" for the plaintiff, there was no

19 cause of action for conversion); *McKell v. Washington Mut., Inc.* 142 Cal. App. 4th 1457, 1491

20 (2006) (dismissing plaintiff's conversion cause of action as "plaintiffs did not allege that defendants

21 were holding their payments . . . in trust for the third party vendors.").

22 Here, Bytechip's grounds for conversion solely relate to the funds held in the Bytechip

23 account.  *See* Complaint ¶¶ 48-50.  However, Bytechip has not alleged how the subject of its

24 conversion claim falls into the narrow exception recognized by courts.  Bytechip does not allege

25 that the funds in the Bytechip account are different from a typical bank account and Bytechip does

26 not allege that the Bytechip account was structured as a trust. *See*, *e.g., id*. ¶ 17.  Because the subject

27 of Bytechip conversion claim is ineligible for relief, their conversion cause of action should be

28 dismissed.

2. **The Economic Loss Rule Bars Bytechip's Conversion Claim**

Bytechip's conversion claim is also barred under the economic loss doctrine. The economic loss doctrine prevents recovery in tort for breaches of contract by a contracting party. *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 1227, 1231-32 (2015) ("[T]he economic loss rule 'prevents the law of contract and the law of tort from dissolving one into the other.'" (quoting *Rich Prod. Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 969 (E.D. Wis. 1999))); *see also JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 183 (2004) ("This complaint sounds in contract, not tort . . . a breach of contract claim cannot be transmuted into tort liability by claiming that the breach interfered with the promisee's business.") Accordingly, a conversion claim "predicated on a mere breach of contract" is barred by the economic loss rule. *Cusano v. Klein*, 280 F. Supp. 2d 1035, 1043 (C.D. Cal. 2003). The economic loss rule thus prevents Bytechip from recovering tort damages against Solid for allegedly breaching the Agreement. *See State Ready Mix, Inc. v. Moffatt & Nichol*, 232 Cal. App. 4th 1227, 1232 (2015) ("[Plaintiff] cannot recast [its] complaint for breach of contract/breach of warranty as a tort action.").

Here, Bytechip's conversion claim is indistinguishable from its contract claim. Bytechip alleges that because "Bytechip did not consent to being prevented from having access to the funds within the 1162 account," Solid wrongfully elected to "withhold access to the entire balance of" the Bytechip account. Complaint ¶¶ 49-50. This allegation is substantively identical to Bytechip's earlier allegation for breach of contract: "Solid breached its contractual obligations under the Solid Contract by failing to enable Bytechip as an Accountholder to transfer Bytechip's Financial Account to any ACH-enabled account at any other financial institution since January 20, 2023." Complaint ¶ 43. Bytechip seeks to do exactly what the economic loss rule bars it from doing: holding Solid liable in tort for alleged breach of contract.[2] Its conversion claims should thus be dismissed with prejudice.

---

[2] Only in extreme circumstances can contract and tort claims based on the same underlying conduct proceed in parallel. *See Elrich v. Menezes*, 21 Cal. 4th 543, 551-52 (1999) ("Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury . . . for breach of the covenant of good faith and fair dealing in insurance contracts . . . for wrongful discharge in violation of fundamental public policy . . . or when the contract was fraudulently

### 3. Bytechip Fails to Allege Undisputed Ownership Over the Funds in the Bytechip Account

Bytechip's conversion cause of action further fails as a matter of law because it does not adequately plead two of the essential elements of a conversion claim.  Under California law, the elements of conversion are: "(1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (citing *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 543-44 (1996)).  However, a "plaintiff cannot establish the ownership of the allegedly converted property where the status of the property is disputed." *Snapkeys, Ltd. v. Google LLC*, 539 F. Supp. 3d 1040, 1055 (N.D. Cal. 2021); see *also Finton Constr., Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 214 (2015) (holding when "[a]t best, the status of the property continues to be disputed," the ownership element of conversion cannot be established).

Here, Bytechip cannot allege undisputed possession in the Bytechip account.  Rather, these funds have been seized by the United States because, according to the verified Forfeiture Complaint, the Bytechip account "contain[s] the proceeds of wire fraud, in violation of 18 U.S.C. § 1349, and/or conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1343, and/or concealment money laundering, in violation of 18 [U.S.C.] § 1956(a)(1)(B)(i), and that all the property in the[] account[] was involved in money laundering transactions[.]"  RJN, Ex. 2 at ¶ 45.  Bytechip is presently contesting that seizure and ownership of the funds in the parallel forfeiture action in the Western District of Tennessee.  RJN, Ex. 5.  Because the status regarding possession of the Bytechip account is in dispute, Bytechip's conversion cause of action fails as a matter of law.

### C. Bytechip is Barred from Pursing its Unfair Competition Claim

Bytechip's "catch-all" cause of action under California Business and Professions Code Section 17200 ("UCL") also fails – for multiple, independent reasons, including lack of equitable

induced." (citations omitted)).  None of those circumstances are present here, nor does Bytechip even attempt to allege any.

1  jurisdiction, the inapplicability of their vicarious liability theory, failure to present a cognizant legal

2  theory, and lack of standing.

### 1.    Plaintiff's UCL Claim Lacks Equitable Jurisdiction

4      The Ninth Circuit has repeatedly made clear that if a "[plaintiff has] an adequate legal

5  remedy . . . [a] district court lack[s] equitable jurisdiction to hear [their] UCL claim." *Guzman v.*

6  *Polaris Indus. Inc*., 49 F.4th 1308, 1313 (9th Cir. 2022); *see also Sonner v. Premier Nutrition Corp.*,

7  971 F.3d 834, 841-44 (9th Cir. 2020).  Accordingly, courts routinely dismiss UCL claims at the

8  pleading stage for lack of equitable jurisdiction.  *See, e.g., Yamasaki v. Natrol, LLC*, 2023 WL

9  5022284, at *2 (N.D. Cal. July 17, 2023) (dismissing UCL claim for lack of equitable jurisdiction

10 where the CLRA provided an adequate remedy at law); *Durkee v. Ford Motor Co.*, 2014 WL

11 4352184, at *3 (N.D. Cal. Sept. 2, 2014) ("Because the UCL provides for only equitable remedies,

12 and plaintiffs have an adequate remedy at law for the alleged Song–Beverly Act violation, plaintiff's

13 UCL claim must be dismissed.").

14     Here, Bytechip holds an adequate remedy at law: self-defense in the United States's

15 Forfeiture Action.  RJN, Ex. 3 at ¶ 3; RJN, Ex. 5.  Resolution of the United States's seizure of the

16 Bytechip account – the same account at issue in this case – is an adequate remedy of law available

17 to the Bytechip.  Further, because Bytechip has alleged alternative remedies of law in its complaint

18 (such as breach of contract), its UCL claim must be dismissed.  *See, e.g., Gardner v. Safeco Ins. Co.*

19 *of Am.*, 2014 WL 2568895, at *7 (N.D. Cal. June 6, 2014) (dismissing UCL claim where plaintiffs'

20 "claims for breach of contract . . . may provide an adequate remedy [at law].").

### 2.    Bytechip's Vicarious Liability Theory Bars Its UCL Claim

22     A UCL claim "cannot be predicated on vicarious liability" because liability must be based

23 on "personal participation . . . and unbridled control." *Perfect 10, Inc. v. Visa Int'l. Serv. Ass'n*, 494

24 F.3d 788, 808 (9th Cir. 2007) (quoting *Emery v. Vista Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960

25 (2002)).  Here, Bytechip's UCL claim purely rests on a theory of vicarious liability and therefore

26 must be dismissed.  Bytechip alleges that Solid's "[w]itholding the deposits made by Plaintiff for a

27 prolonged period of time without justifications" and "[p]reventing Plaintiff from accessing its

28 account without justifications" constitute "unlawful, unfair and/or fraudulent" business acts.

Complaint ¶ 55. However, the **United States**, not Solid, is responsible for the allegedly improper acts in question. As part of a Forfeiture Action, the United States has seized Plaintiff's funds. RJN, Ex. 1. The United States alone has "personal participation" and "unbridled control" in "[w]itholding the deposits made by Plaintiff for a prolonged period of time without justifications" and "[p]reventing Plaintiff from accessing its account." Complaint ¶ 55. By attempting to hold Solid liable for the acts of the federal government, Bytechip advances an impermissible theory of vicarious liability that warrants dismissal with prejudice.

### 3. Bytechip Fails to State a Claim for Unfair Business Practices under Any Definition

To state a claim under section 17200, "a plaintiff must establish that the practice is (1) unlawful (i.e., is forbidden by law), (2) unfair (i.e., harm to victim outweighs any benefit) or (3) fraudulent (i.e., is likely to deceive members of the public)." *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1198 (N.D. Cal. 2016). While each prong offers a distinct theory of liability, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009), a plaintiff must establish a violation of at least one prong to sufficiently plead a UCL claim. Here, Bytechip fails to do so. Indeed, Bytechip fails to allege a specific violation that is either unlawful, unfair, or fraudulent. *See* Complaint ¶ 54-57. This alone warrants dismissal of the UCL claim. *See Moss*, 197 F. Supp. 3d at 1198. Rather, Bytechip vaguely alleges the bare elements of the cause of action, and flip-flops between referring to the "acts and/or practices" as "unlawful, unfair and/or fraudulent" in ¶ 55, "unlawful" in ¶ 56, and again "unlawful, unfair and/or fraudulent" in ¶ 57.

In any event, even if Bytechip had adequately alleged any specific prong, Bytechip's claim would still fail as a matter of law. Under the unlawful prong, the unlawful practice must only be predicated on "statutory violations, and [cannot] include common law violations such as breach of contract." *Lesley v. Ocwen Fin. Corp.*, 2013 WL 990668, at *5 (C.D. Cal. Mar. 13, 2013). Here, despite referring to the alleged conduct as "unlawful," Bytechip fails to identify a statutory violation and instead solely rely on allegations under their breach of contract claim. Complaint ¶ 55 ("Withholding the deposits . . . and [p]reventing Plaintiff from accessing its account . . . .").

Under unfairness prong, three tests have emerged in consumer cases – none of which apply here. *Lazo v. Bank of Am., N.A.*, 2012 WL 1831577, at *11 (N.D. Cal. May 18, 2012). The first test states that the allegedly unfair practice "must be tethered to specific constitutional, statutory, or regulatory provisions." *Lazo*, 2012 WL 1831577 at *11 (citing *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256-57 (2010)). Here, Bytechip fails to identify any provision to which any allegedly unfair practice is tied to. Instead, the only basis of the UCL claim is the same allegations that form the basis of the breach of contract claim. Complaint ¶ 55. The second test assess "whether the alleged business practice 'is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256-57, (2010) (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1260 (2006)). Here, Bytechip does not make any allegation that Solid's actions were "immoral, unethical, oppressive, unscrupulous or substantially injurious." Nor could it. The third test relies on the "definition of 'unfair' in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that '(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided.'" *Drum*, 182 Cal. App. 4th at 256-57. As with the first two tests, Bytechip makes no effort to allege any of the requirements under Section 5 of the Federal Trade Commission Act.

Finally, under the fraudulent prong, UCL claims must be pled with particularity. *Kearns*, 567 F.3d at 1127; *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Therefore, if a plaintiff fails to allege with specificity its exposure and reliance on a particular misrepresentation, the fraudulent practices claim must fail. *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 924 (N.D. Cal. 2012). Here, Bytechip never alleges that statements made from Solid to Bytechip were false. Bytechip makes no effort to identify any misrepresentation forwarded by Solid, Solid's intent to defraud Bytechip, or Bytechip's justifiable reliance of any alleged misrepresentations. Accordingly, the UCL claim fails under this prong as well. *Charpentier v. Los Angeles Rams Football Club Co., Inc.*, 75 Cal. App.

1  4th 301, 312 (1999) (The tort of deceit or fraud requires: "(a) misrepresentation (false representation,

2  concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to

3  induce reliance; (d) justifiable reliance; and (e) resulting damage." (citations omitted)).

4        **4.    Bytechip Lacks Standing Under the UCL**

5        Finally, the UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal.

6  Bus. & Prof. Code § 17200.  To state a claim under the UCL, a plaintiff must allege facts showing

7  that she has "suffered injury in fact and has lost money or property as a result of the unfair

8  competition."  Cal. Bus. & Prof. Code § 17204.  However, a tangential relationship between the

9  plaintiff's alleged injury and a defendant is not enough.  A plaintiff's UCL claim must establish a

10  "'causal connection' between [defendant's] alleged UCL violation and [Plaintiff's] injury in fact."

11  *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) (quoting *Hall v. Time Inc*., 158 Cal.

12  App. 4th 847, 855 (2008)).  Here, Bytechip fails to do so because the alleged injury is predicated

13  not upon any action by Solid, but rather upon the **United States'** seizure of the funds in the Bytechip

14  account.  RJN, Ex. 1.  Therefore, Plaintiffs fail to allege a "causal connection" between Solid's

15  purported actions and Bytechip's alleged injury in fact and the UCL claim fails as a matter of law.

16  **III.    CONCLUSION**

17        For these reasons, Solid respectfully requests that the Court dismiss with prejudice

18  Bytechip's allegations of breach of contract, conversion, and unfair competition.

19

20

21  DATED:  June 5, 2024                     Respectfully submitted,

22                                           QUINN EMANUEL URQUHART & SULLIVAN,
23                                           LLP

24

25                                  By _____*/s/ James D. Judah*_____
26                                     JAMES JUDAH

27                                     Attorney for Defendant Solid Financial
                                       Technologies, Inc.
28